UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE OHIO SECURITY | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | Case Number 1:20-cv-1223-RLY-MG |
| v. | ) | |
| | ) | |
| BEST INN MIDWEST, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF THE OHIO SECURITY INSURANCE COMPANY'S AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Comes now the Plaintiff, The Ohio Security Insurance Company., by counsel, and

pursuant to the Court's Order of December 17, 2020 (Doc. #50 in Court file), submits the

following Amended Complaint:

**I.**
**PARTIES**

1.)    The Ohio Security Insurance Company is a foreign insurer registered to do business in

the State of Indiana.  Its main office is 175 Berkeley Street, Boston, MA 02116, and The Ohio

Security Insurance Company is a member of the Liberty Mutual Insurance Company.

2.)    The parties have stipulated (Doc. #29 in Court file) the following:

   a.) The state of the Ohio Security Insurance Company on April 22, 2020 was
   New Hampshire.

   b.) The state of the Ohio Security Insurance Company's principal place of
   business on April 22, 2020 was Massachusetts.

3.)    On December 20, 2018 the Plaintiff The Ohio Security Insurance Company issued policy

number BKS58432709 to the named insured Best Inn Midwest, LLC.

1

4.)     The Best Inn Midwest, LLC is an Indiana limited liability company that owns and operates a hotel at 4505 S. Harding Street, Indianapolis, IN 46217-9266.  The parties have further stipulated that the sole member of Best Inn, LLC is Mr. Ashok Reddy who was a citizen of the State of Washington on April 22, 2020. (Doc. #29 in Court file).

5.)     A copy of the insurance contract between the parties is in the State Court record filed in this removed action as Doc. #5 between pages 43-241.  The policy period was from December 20, 2018 to December 20, 2019.

## II.
## JURISDICTION

6.)     This Court has diversity jurisdiction of this action pursuant to 28 USC §1332.

7.)     The parties have stipulated the amount in controversy exceeds $75,000.

## III.
## THE FACTS

**A.     History of Best Inn 2010 to 2017**

8.)     In 2010 Chad Reddy formed the Indiana LLC Best Inn Midwest to purchase a hotel at 4505 S. Harding Street in Indianapolis called the Econo Lodge.

9.)     The prior owner of the hotel defaulted on a loan, and the hotel was operated by a bank at that time.

10.)    The newly formed Best Inn company paid $390,000 for the hotel.

11.)    The hotel consists of five separate but connected buildings which are described in Exhibits 3 and 4 attached below and incorporated herein by reference and which contain the following:

　　　　　Building (A) - One floor, no guest rooms

　　　　　Building (B) - Two floors and 24 rooms

2

Building (C) - Two floors and 50 rooms

Building (D) - Two floors and 32 rooms

Building (E) - Two floors and 44 rooms

12.)    On November 20, 2013, the City of Indianapolis filed a complaint for injunction, fine and compensatory and punitive damages against Best Inn in the Marion County Superior Court under cause number 49G21-1311-OV-042183 alleging:

a.) The hotel was a nuisance with over 400 police runs since 2010;

b.) Had operated without a required city license or with an expired license since 2013; and

c.) That the hotel was allowed to deteriorate and become dilapidated by Mr. Reddy failing to adequately maintain or repair it thereby rendering it unsafe.

13.)    On May 8, 2014, Health and Hospital Corporation of Marion County ("HHC") filed a complaint for injunction and fine against Best Inn Midwest, LLC under cause number 49F12-1404-PL-000974.  This complaint alleged 13 different violations of the health code.  On or about May 15, 2014, the City filed the verified motion for immediate and temporary restraining order and preliminary injunction because of the overwhelming concern for public safety, housing, continued criminal activity, and drain on public resources.

14.)    On May 16, 2014, the City ordered Best Inn to cease and desist all hotel operations.

15.)    On June 24, 2014, the Marion County Court entered findings of fact and conclusions of law discussing problems with the hotel roof, water pipes, ceiling damages, broken windows, mattresses on the floor, water on the floors, junk and trash at the hotel.  The Court enjoined the hotel from continued operations and prohibited anyone from occupying or inhabiting the hotel.

16.)    For approximately three years from May 16, 2014 until May 20, 2017, the Best Inn remained closed.  On May 22, 2017, Best Inn entered into an agreed judgment and order with the

3

City in the lawsuit in which portions of the Best Inn would be allowed to reopen subject to future compliance inspections and hearings. Best Inn was under order of the Court not to open or operate Building (E).

17.) On May 20, 2017, Best Inn's license was restored subject to the conditions of the restraining order to rent up to 60 rooms to the public for lodging.

18.) The Marion County Health Department continued to inspect the hotel on a monthly basis beginning in September of 2017 and cited Best Inn for a number of violations (eg. Water damaged and/or moldy ceilings, deteriorated interior walls, etc.).

**B.**     **Chad Reddy Buys Insurance for Best Inn December 2017**

19.) On November 21, 2017, Chad Reddy contacted his insurance agent Carrie Ovrid asking for a quote for insurance on the hotel. Reddy represented to Ovrid the following:

         a.) The hotel had annual revenues of $490,000 when in reality the hotel had been closed for three years and did not have such revenues; and

         b.) There were no unoccupied areas in the hotel when in reality Building (E) was completely closed and the first floors of Buildings (C) and (D) [hereinafter called (C1) and (D1)] were closed as was most of Building (A).

20.) Best Inn's insurance agent submitted this information to Ohio Security which relied upon the representations to issue the policy thinking it was insuring an operational hotel.

21.) At no time did Best Inn or Chad Reddy reveal the hotel was operating under the continuing conditions of a restraining order, had been closed for three years, had negligible revenues in 2017, and the Buildings (E) [both (E1) and (E2)], (C1), (D1), and large parts of Building (A) were vacant.

22.) If Ohio Security knew these facts it would not have entered this contract of insurance.

23.)    The insurance contract was nonetheless issued on December 20, 2017 insuring each of these five buildings as separate locations with separate limits of insurance under one policy. (See: Doc. #5 in Court file - State Court Record Pages ID #45, 49-57, which are the declaration pages of the policy setting out separate limits for each building).

**C.     Health Department Citations Continue at the Hotel in 2018**

24.)    The Marion County Health Department inspections continued at the hotel in January , February, March, April, June, August, October, November, and December of 2018.

25.)    Citations were issued for the correction of a wide range or problems including but not limited to non-functional air conditioning units, interior walls and ceilings in poor repair, swimming pool as a mosquito harborage, no hot water in over a month, mold along wallpaper seams in hallway, mildewed carpet, drywall falling apart in hallway, roach infestation, electrical sockets not wired correctly, rooms do not have water, and boiler room leaking.

**D.     Marion County Board of Health Declares Hotel Unfit for Human Habitation and Orders Evacuation on July 31, 2019**

26.)    The problems cited by the Health Department in 2017-2018 went largely uncorrected and continued with additional or renewed citations in 2019.

27.)    Finally on July 31, 2019 the Health Department conducted an inspection which resulted in this citation:

| Ordinance | Nature of Violation | Location(s) | Direction |
|---|---|---|---|
| 10-303 | Dwelling/building is unsafe and/or unfit for human habitation/occupation. PROPERTY MUST BE VACATED IMMEDIATELY. SEVERE PLUMBING LEAKS; SEWAGE AND STANDING WATER; COMPROMISED STRUCTURAL INTEGRITY; EXTENSIVE MOLD AND WATER DAMAGE THROUGHOUT;LACK OF ELECTRIC IN HALF OF BUILDING; AND INADEQUATE INGRESS/EGRESS IN EVENT OF FIRE. | THROUGHOUT | |

28.)     The directive to evacuate the building followed the discovery of conditions set out in

EX.56 attached below and incorporated herein by reference, which are the Health Department

photos taken on July 31, 2019 and which are incorporated herein by reference.

29.)     On August 9, 2019, the Health & Hospital Corp. again sued Best Inn in the Marion

County Superior Court (Cause No.: 49D04-1908-OV-03244) for an injunction and fines for

ordinance violations.

30.)     A second suit was filed by the Health & Hospital Corp. against Best Inn on August 12,

2019 (Cause No.: 49D04-1908-OV-032689) asking for an emergency injunction stating in part:

> 5.     *That the Health Officer issued an administrative notice and order to the Defendant in the manner set out in The Code, which notice and order required the Defendant to bring the property into compliance with The Code.  A copy of the notice and order are attached hereto, incorporated herein, and marked as "Exhibit A".*

> 6.     *That due to the nature of the alleged defects, specifically, occupant must vacate the dwelling unit, the subject property presents an imminent health or safety hazard to its occupants and to the general citizenry of Marion County, Indiana.*

> 7.     *That the Defendant has wholly or in part failed to comply with the terms and provisions of the administrative order, and the premises remain defective and in violation of the terms of The Code and the provisions of the order.*

> **********

> 9.     *That according to Section 21-402 of The Code, an emergency notice of violation immediately becomes a judicially-enforceable, final order.  Any person subject to an emergency notice of violation shall comply immediately.*

An emergency court order was requested to enforce the Health Departments' administrative

order to evacuate and shut down the hotel.

6

31.)    On September 10, 2019, in the emergency suit by Health & Hospital under Cause No.: 49D04-1908-OV-032689, Best Inn admitted each allegation and promised, as it had done many times before, to correct all the violations.

32.)    After multiple hearings in September of 2019, the City of Indianapolis revoked Best Inn's license to operate a hotel. (See: EX.63 - Doc. #71 in Court file - City 10.8.19 License Revoked).

**E.    The Best Inn Has Been "Vacant" Pursuant to the Insurance Policy Since the Inception of the Policy**

33.)    The insurance contract contains the following provision:

> **6.    Vacancy**
> **a.    Description of Terms**
> (1)    As used in this Vacancy Condition, the term building and the term vacant have the meanings set for in **(1)(a)** and **(1)(b)** below:
>
> \*\*\*\*\*\*\*\*\*\*
>
> (b)    When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> \*\*\*\*\*\*\*\*\*\*
>
> (ii)    Used by the building owner to conduct customary operations.
>
> \*\*\*\*\*\*\*\*\*\*
>
> (2)    Buildings under construction or renovation are not considered vacant.
>
> \*\*\*\*\*\*\*\*\*\*
>
> **b.    Vacancy Provisions**
>
> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
> **(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

7

        **(a)** Vandalism;

        **(b)** Sprinkler Leakage, unless you had protected the system against freezing;

        **(c)** Building glass breakage;

        **(d)** Water damage; Theft; or

        **(e)** Attempted theft.

                        (See: Policy Doc. #5 in Court file at Page ID #13).

34.)    Less than 31% of the total square footage of each of the five buildings insured was actually used by Best Inn to conduct its alleged "customary operation" of a hotel renting rooms overnight to the public in 2018 or 2019.

35.)    Building (E) was pursuant to the Court order in 2014 prohibited from being used as a hotel and has been empty from that time forward to the end of the policy on December 20, 2019.

36.)    Except for the check-in desk, the office behind it, and the lobby in front of it, Building (A) was not used for hotel operations of feeding and entertaining guests in 2018-2019.  The restaurant and lounge were closed.  No conferences were held in the conference rooms, nor was the arcade room in operation during this period.  Less than 31% of the total square footage of Building (A) was used as a hotel facility.

37.)    For sixty (60) consecutive days before all of the claims which Best Inn has made against the policy the hotel was "vacant" as defined in the policy.

**IV.**
**BEST INN'S SPOLIATION AND FAILURE TO COOPERATE AND PROVIDE REQUESTED INFORMATION CONCERNING OCCUPANCY OF THE HOTEL IN 2019 CONSTITUTES A MATERIAL AND PREJUDICIAL BREACH OF THE CONTRACT**

38.)    Best Inn has a duty to cooperate with Ohio Security in the investigation of the claims made under the policy. (See: The Policy - Doc. #5 in Court file at Page ID #161-162, #3 Duties in the Event of Loss or Damage).

39.)    Best Inn, acting through its sole owner Chad Reddy, has refused to provide Ohio Security

with information requested many times concerning hotel guest registers and guest records for the

period of January 1, 2019 through December 31, 2019 required to be kept by Indiana Statute,

Ind. Code 16-41-29-1, and which would show who stayed at the hotel in what room and upon

what date.

40.)    Requests for these records which are incorporated herein by reference were made on:

        1.) January 31, 2020  EX.6   See: Doc. #71-1, Page ID #719 in Court file

        2.) March 7, 2020     EX.7   See: Doc. #71-2, Page ID #723 in Court file

        3.) May 19, 2020      EX.8   See: Doc. #71-3, Page ID #725 in Court file

        4.) July 24, 2020     EX.13 See: Doc. #71-4, Page ID #726 in Court file

41.)    Specifically counsel for Ohio Security offered multiple times to go to the hotel and meet

Mr. Reddy's representatives to retrieve these records, but no response from Mr. Reddy was

received.

42.)    Ohio Security has sought relief from the Court concerning Best Inn's refusal to provide

this information. (See: Sanction Motions and Best Inn's responses on this subject at Doc. #51,

52, 55, and 57 in Court file).

43.)    Long after these multiple requests for this information were made, Ohio Security was

permitted to inspect what was left of the hotel on January 14, 2021, and on the floor in the office

of the hotel were the requested guest log records for March 1, 2019 to April 12, 2019.  The

remainder of these records were present but were unreadable, wet, or ripped.  By this late date

the destruction of the hotel by intruders had destroyed the remainder of the requested records

which would have been available had Chad Reddy cooperated one year earlier when counsel

9

requested these same records and the hotel had not yet disintegrated into ruble as it did in the second half on 2020.

44.)    EX.121 which is incorporated herein by reference and attached below is an example of the record found on January 14, 2021 and which Mr. Reddy refused to produce and which he permitted to be destroyed knowing they were at the hotel.  "DNR" means do not rent.  For example, on this date of April 1, 2019 there were six rooms rented in Building (B), three rooms in Building (C2), and two rooms in Building (D2).

45.)    All of the claims made by Best Inn were investigated under a reservation of rights. Unaware of the history of the hotel, Ohio Security lacked specific knowledge necessary to understand or know the vacancy clause in the policy may apply to these claims and this was the basis for requesting the guest log information.  Best Inn's persistent failure to respond and answer the question led Ohio Security to send the vacancy provision to Attorney Kennedy on June 16, 2020 in conjunction with phone conversations concerning the need for the necessary information to ascertain the possible application of the vacancy provision to the controversy. The provision was nonetheless pled in Ohio Security's answer to Best Inn's counterclaim on July 7, 2020 as a precautionary matter. (See: Answer to Counterclaim - Doc. #50, Page ID #396 in Court file).

46.)    Chad Reddy was aware this could be an issue under the policy and at all times he intentionally ignored and failed to respond to the requests for the room guest log information.

47.)    Chad Reddy is guilty of spoliation of this important evidence.

48.)    The intentional hiding of the fact the hotel has been in a state of vacancy since the beginning of the policy is further demonstrated by EX.83 - Premium Audit 2018 attached below in which on April 8, 2019 Mr. Reddy falsely reported gross income for the year 2018 of $325,66

when his actual gross receipts were several hundred thousand dollars less than this figure. If he had reported his true revenue figure it would have alerted Ohio Security the hotel was vacant. The contents of EX.83 are incorporated herein by reference.

49.) The failure to cooperate as required by the policy and the spoliation of evidence which accompanied it prejudiced Ohio Security and constitutes a material breach of the contract negating any further legal obligation by Ohio Security to Best Inn.

**V.**
**CLAIM NO.1**

50.) On October 11, 2019, Best Inn reported to Ohio Security claim #23742376 stating that between April 15, 2019 and July 23, 2019 employees Jason Carr and Christy Pinter stole cash from the hotel.

51.) Best Inn reported the alleged theft to police on October 10, 2019 and informed the police the theft was $25,000.

52.) At the time of the alleged theft the policy deductible was $25,000.

53.) The police informed Best Inn insufficient information and evidence existed to justify further investigations into the alleged theft.

54.) After making the claim to Ohio Security on October 11, 2019, Best Inn provided no further information substantiating the claim, such information having been requested by Ohio Security.

55.) Best Inn does not have sufficient data or information which establishes the alleged theft actually occurred, when it occurred, or how much was stolen.

56.) The insurance contract provides coverage for an employee theft up to a limit of $50,000 and further provides:

(2) We will not pay for loss or damage:

\*\*\*\*\*\*\*\*\*\*

**(b)**    The only proof of which as to its existence or amount is dependent upon:
    **1.**    An inventory computation; or
    **2.**    A profit and loss computation.

(See: Paragraph (m)(2) which is at Doc. #5,
Page ID #206 in Court file).

57.)    There is no coverage under the insurance contract for this claim #23742376.

## VI.
## CLAIM NO.2

58.)    On August 3, 2019, Best Inn reported that on July 31, 2019 the Health Department closed the hotel due to leaks in the flat roof of Building (A), drywall damage, and the presence of sewage in the hotel.

59.)    The leaks in the flat roof were due to a roof that was beyond its useful life and had a number of holes and openings in it that let water enter and thereby damage the interior and the drywall.

60.)    Other water leaks in Buildings (E1) and (C1) were present and were described by Dustin Carrico who was hired by Best Inn in August of 2019 as water plumbing line leaks that had developed over time and which he repaired.

61.)    The alleged damages to the roof of the Best Inn Midwest, LLC and the further alleged consequent water entry into the building and the plumbing system leaks are not covered losses under the policy because the damages were caused by normal wear and tear, decay, and deterioration of the roof, faulty and inadequate maintenance and repairs, as well as a repeated

seepage or leak of water for more than 14 days as set out in the following provisions of the parties' contract in CP 10 30 10 12:

*Causes of Loss - Special Form*

*\*\*\*\*\**

**B.**   **Exclusions**

    **1.**   *We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. (at p.1).*

    *\*\*\*\*\**

    **g.**   *Water*

        *(1)*   *Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from, any of these, all whether or not driven by wind (including storm surge).*

        *(2)*   *Mudslide or mudflow.*

        *(3)*   *Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment.*

        *(4)*   *Water under the ground surface pressing on, or flowing or seeping through:*

            *(a) Foundations, walls, floors or paved surfaces;*

            *(b) Basements, whether paved or not; or*

            *(c) Doors, windows, or other openings. (at p.2).*

    **h.**   **"Fungus", Wet Rot, Dry Rot and Bacteria**
        *Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.*

13

> *But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss"*
>
> *This exclusion does not apply:*
>
> **(1)**  *When "fungus", wet or dry rot or bacteria result from fire or lightning; or*
>
> **(2)**  *To the extent that coverage is provided in the Additional Coverage, Limited Coverage for "Fungus", Wet Rot, Dry Rot, And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.*
>
> *Exclusions **B.1.a.**  through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area. (at p.3).*

**2.**  *We will not pay for loss or damage caused by or resulting from any of the following:*

*\*\*\*\*\**

**d.**  **(1)**  *Wear and tear;*

**(2)**  *Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.*

**(3)** *\*\*\*\*\**

**(4)**  *Settling, cracking, shrinking, or expansion. (at p.3).*

*\*\*\*\*\**

**f.**  *Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of days or more. (at p.4).*

*\*\*\*\*\**

**m.**  *Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss. (at p.5).*

14

**3.**     *We will not pay for loss or damage caused by or resulting from any of the following.* **3.a.** *through* **3.c.** *But if an excluded cause of loss that is listed in* **3.a.** *through* **3.c.** *results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. (at p.5).*

\*\*\*\*\*

**c.**     *Faulty, inadequate or defective:*

**(1)**     \*\*\*\*\*

**(2)**     *Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;*

**(3)**     *Materials used in repair, construction, renovation or remodeling; or*

**(4)**     *Maintenance, of part or all of any property on or off the described premises. (at p.5).*

\*\*\*\*\*

**C.**     **Limitations**

*The following limitations apply to all policy forms and endorsements, unless otherwise stated:*

**1.**     *We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section. (at p.6).*

\*\*\*\*\*

**c.**     *The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or rot, unless:*

**(1)**     *The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or*

15

**(2)**    *The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure. (at p.7).*

62.)    Best Inn further alleged minor copper thefts occurred before August 3, 2019 in the hotel. Where these alleged thefts occurred, when they occurred, or who was responsible is unknown to Best Inn.

63.)    Ohio Security reasonably believes the vacancy clause precludes coverage for these alleged minor copper thefts.

64.)    There is no coverage under the policy for Claim No.2 (23574253).

## VII.
## CLAIM NO.3

65.)    On December 19, 2019, one day before the expiration date of the policy, Best Inn reported claim #23765119 asserting that between August 15, 2019 and December 19, 2019 vandals had smashed sliding glass doors and interior wooden doors.

66.)    Best Inn cannot identify which of the five buildings sustained such damage, when the damage occurred, or exactly where the damage is located other than to say the glass sliding doors were mostly on the backside of Buildings (C1) and (D1) which are shielded from public view.

67.)    No police reports were filed by Best Inn concerning the alleged claim.

68.)    The vacancy clause in the insurance contract precludes coverage for this claim.

69.)    The applicable policy deductible likewise exceeds the claim.

## VIII.
## CLAIM NO.4

70.)    On September 9, 2019, Best Inn reported that on August 23, 2019 someone had been on the roof of Building (A) removing copper from rooftop A/C units.  Ohio Security opened claim #23586875.

71.) This theft occurred before August 16, 2019 as depicted in part by these photos taken on August 16, 2019:





72.)    Claim No.4 also includes the alleged theft of 50 flat screen televisions, 50 chrome stainless steel sink faucets, and two fans which were alleged to have been stolen on September 5, 2019 and a $124.00 copper pipe stolen from a restroom on October 1, 2019.

73.)    The vacancy clause in the policy precludes coverage for this claim.

74.)    The applicable policy deductible exceeds the value of the claim.

## IX.
## CLAIM NO.5

75.)    On October 11, 2019, Best Inn reported that on or about September 1, 2019 someone had entered Building (E1) and stole copper water lines for rooms 150 to 175.  Ohio Security assigned #23742384 to this claim.

76.)    Dustin Carrico testified this occurred in one night on or about the week of August 7, 2019 and moldy drywall on (E1) was removed by two workers in less than one week at a cost of $2,000 or less.

77.)    The City of Indianapolis directed the drywall removal pursuant to their efforts to reduce the health hazards at the hotel.

78.)    While Ohio Security disputes whether this minor repair constitutes activity which could be characterized as a "renovation" or placing Building (E) "under construction" so as to suspend the operation of the vacancy clause, Ohio Security has nonetheless evaluated the damage from the stolen copper lines at $49,733.50 and after subtracting the $1,000 deductible, has paid Best Inn the sum of $48,733.50 on this claim.

79.)    Ohio Security prays the Court enter a declaratory judgment that no further sums are owed Best Inn under the contract for this claim.

# X.
## CLAIM NO.6

80.)    On November 5, 2019, Best Inn reported that on September 1, 2019 the hotel boiler (hot water) equipment broke down and that a plumber had advised the hotel to replace it because it was not repairable.  Ohio Security assigned this claim #23749957.

81.)    This boiler hot water heater had exceeded its useful life.  For the several years prior to 2019 the hotel had many problems with it such as flames shooting up the side of the equipment. In June of 2018 and June of 2019 the hotel had received Health Department citations for a complete lack of hot water or intermittent hot water of varying temperatures.

82.)    There is no coverage for this claim under the insurance policy.  The equipment Breakdown Coverage Endorsement provides in relevant part:

> **A.** The following is added as an Additional Coverage to the CAUSES OF LOSS - BASIC FORM, CAUSES OF LOSS - BROAD FORM, and CAUSES OF LOSS - SPECIAL FORM:
>
> **Additional Coverage - Equipment Breakdown**
>
> 1. We will pay for direct physical damage to Covered Property that is caused by an "accident" to "covered equipment".
>
> \*\*\*\*\*\*\*\*\*\*
>
> **5.    Definitions**
>
> The following are added to **H. Definitions**
>
> **a.** "Accident" means a fortuitous event that causes direct physical damage to "covered" equipment that requires repair or replacement. The event must be one of the following:
>
> **(1)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;
> **(2)** Artificially generated electrical current, including electric arcing, that damages electrical devices, appliances, or wires;
> **(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

An "accident" does not include the functioning of any safety or protective device, or any other condition, which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

83.)    No accident occurred involving this equipment.  There is no coverage for equipment that is worn out and has exceeded its useful life.  This is also excluded according to the provisions cited in ¶61 above where loss or damage resulting from wear and tear is excluded.

## XI.
## CLAIM NO.7

84.)    On September 25, 2019, Best Inn reported that on or about September 19, 2019 someone stole copper water lines from Building (A), the banquet room, adjoining hallway, and kitchen area.  Also an air scrubber was stolen.  Ohio Security assigned #23592598 to this claim.

85.)    Less than 31% of Building (A) was being used for the customary operations of a hotel business renting rooms out to the public.

86.)    Between August 20, 2019 and September 21, 2019, the Best Inn hired the Samcro Roofing Company to perform an emergency repair on the building's roof as directed by the Health Department to stop the health hazard of water leaking through the major holes in the roof and into the interior thereby causing mold.

87.)    The actual work on the roof took two weeks or less and while Ohio Security disputes this repair constitutes a "renovation" or otherwise places Building (A) "under construction" so as to suspend the operation of the vacancy clause, nonetheless, Ohio Security has paid Best Inn the sum of $46,397.17 for the damages in this claim.

88.)    Ohio Security prays the Court enter a declaratory judgment that no further sums are owed Best Inn under the contract for this claim.

## XII.
## CLAIM NO.8

89.)     On December 17, 2019, three days before the insurance policy expired, Best Inn reported

that on November 1, 2019 the hotel's washer and dryer need to be repaired or replaced due to

vandalism.  Ohio Security assigned #23764524 to this claim.

90.)     The washer and dryer were installed in the 1990's and in 2009 in Building (D1).

91.)     No police report was made concerning vandalism to the washer or the dryer.

92.)     Chad Reddy under oath could not identify any act of vandalism which occurred or when

it occurred, but stated he thought a new door needed to be installed for some reason.

93.)     The contents of ¶82 above concerning the equipment breakdown endorsement is

incorporated herein by reference as applicable to Claim No.8.  This is also excluded according to

the provisions cited in ¶61 above where loss or damage resulting from wear and tear is excluded.

94.)     The vacancy clause in the policy further and additionally precludes coverage for this

claim.

## XIII.
## CLAIM NO.9

95.)     On November 5, 2019, Best Inn reported that on November 3, 2019 someone broke into

the vacant hotel with an axe and stole 20 flat screen television sets.  Ohio Security assigned

#23749977 to this claim.

96.)     On November 3, 2019, Dustin Carrico filed a police report concerning the incident

asserting 15 flat screen television sets were stolen.

97.)     The vacancy clause in the policy precludes coverage for this claim.

## XIV.
## CLAIM NO.10

98.)    On December 19, 2019, one day before the policy expired, Best Inn reported that on November 14, 2019 the flat roof over Building (A) began leaking again.  Ohio Security assigned #23765090 to this claim.

99.)    Chad Reddy reported to Ohio Security that he hired someone to repair the holes in the roof of Building (A) on August 20, 2019 but had not paid the repair company, Samcro Roofing, the full amount due to complete the work.  Reddy reported it would take approximately another $10,000 to finish the repairs.

100.)   A dispute arose between Best Inn and Samcro Roofing resulting in Samcro Roofing putting a mechanics lien on the property for the balance owed and refusing to finish the job.

101.)   In the meantime water continued to leak through the roof on Building (A) and Best Inn makes Claim No.10 for these leaks and resultant water damages.

97.)    There is no obligation under the insurance contract for Ohio Security to pay the remaining amounts owed to complete the roof repair commenced on Building (A) with Samcro Roofing Company.  Under the causes of loss-special form (CP 10 30 10 12) the following exclusion  and limitation is stated:

     **C.**     **Limitations**

     The following limitations apply to all policy forms and endorsements, unless otherwise stated:

     **1.**  We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

     **********

       **c.**     The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

       **(1)**    The building or structure first sustains damage caused by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters.

[See: Doc. #5 at Page ID #188 and #189 at ¶ (C)(1)(c) in Court file].

102.)    There was no casualty or occurrence which would provide the basis for this incomplete roof repair.

103.)    Ohio Security incorporates herein the allegations from Claim No.2 above at ¶61 explaining the lack of coverage for the hotel roof leaks.

### XV.
### CLAIM NO.11

104.)    On December 19, 2019, one day before the expiration of the policy, Best Inn reported that on December 10, 2019 burglars broke into Building (A) and stole a lawn tractor and a lawn mower.  Ohio Security assigned #23765077 to this claim.

105.)    No police report was filed concerning this claim.

106.)    The vacancy clause in the policy precludes coverage for this claim.

### XVI.
### CLAIM NO.12

107.)    On December 19, 2019, Best Inn reported that on December 15, 2019, 40 to 60 room air conditioner/heaters had copper cut out of them, ten small refrigerators, five large refrigerators, and 60 to 80 television sets were stolen or broken.

108.)    The vacancy clause in the policy precludes coverage for this claim.

## XVII.
## CLAIM NO.13

109.) On December 17, 2019, Best Inn reported that on December 16, 2019 the hotel telephone system was not working correctly. Ohio Security assigned #23764527 to this claim.

110.) The Mitel telephone system was installed around 1990. Chad Reddy stated outgoing calls were not functioning properly and the phone did not ring properly at the front desk. Chad Reddy could not identify any specific cause of these problems, and he admitted the telephone system may just be worn out and beyond its useful life.

111.) Chad Reddy under oath could not identify any act of vandalism which occurred or when it occurred involving the telephone system.

112.) The contents of ¶82 above concerning the equipment breakdown endorsement is incorporated herein by reference as applicable to Claim No.13. This is also excluded according to the provisions cited in ¶61 above where loss or damage resulting from wear and tear is excluded.

## XVIII.
## CLAIM NO.14

113.) On March 10, 2020 Best Inn reported room air conditioning units had been vandalized and stolen at the hotel on that date. Ohio Security assigned #23789107 to this claim.

114.) There is no coverage for this claim under the policy because the insurance contract expired on December 20, 2019.

## XIX.
## EVACUATION PAYMENTS

115.) After the Health Department ordered everyone to leave the hotel on July 31, 2019, Best Inn paid three or four guests $200 each to leave.

116.)    To the extent these payments may be covered under the emergency evacuation provisions in the policy, the amounts do not exceed the deductible of $1,000.

WHEREFORE, Ohio Security prays the Court enter the following relief:

a.) To the extent Ohio Security has denied coverage of a claim above, it requests declaratory relief establishing no further legal obligation is owed Best Inn under the contract of insurance for the claim;

b.) To the extent Ohio Security has paid a claim above, it requests declaratory relief establishing no further payments are owed Best Inn under the contract of insurance for the particular claim; and

c.) Ohio Security prays the Court grant all other proper relief under the circumstances.

Respectfully submitted,

*/s/ Joseph M. Dietz*
Joseph M. Dietz, I.D. #4664-49
Attorney for Plaintiff, The Ohio Security
Insurance Company

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 3rd day of May, 2021, the undersigned electronically filed

the aforementioned document through the Court's CM/ECF system, with a copy automatically

served via the Court's CM/ECF system upon all counsel of record.

Frank S. Homsher
510 Bell St.
Edmonds, WA 98020
Homsherf7@aol.com


and by US mail and e-mail upon:

A. Chad Reddy
P.O. Box 2535
Issaquah, WA 98027


                                                        /s/ Joseph M. Dietz
                                                        Joseph M. Dietz, I.D. #4664-49

Joseph M. Dietz
MEILS, THOMPSON, DIETZ, & DAVIS
251 East Ohio Street, Suite 830
Indianapolis, Indiana 46204
(317) 637-1383
josephdietz@gmail.com